DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, ) ) ) | CASE NO. 10-CV-02287 |
| Plaintiff, ) ) | MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S |
| v. ) ) | SUMMARY JUDGMENT MOTION AND MOTION TO STRIKE |
| COMPLETE DEVELOPMENTS LLC, INVESTMENT INTERNATIONAL, INC., KEVIN HARRIS, KEELAN HARRIS, KAREN STARR and PATRICK COLE, ) ) ) ) ) |  |
| Defendants, ) ) |  |
| and ) ) |  |
| MAJESTIC ENTERPRISES COLLISION REPAIR, INC., RAK PALACE RENT-A-CAR and UCAN OVERSEAS CORPORATION S.A., ) ) ) ) ) |  |
| Relief Defendants, ) |  |

Before the Court is Plaintiff's Motion for Summary Judgment against Global Strategic Marketing, Inc. ("GSM") and Patrick Cole ("Cole") (collectively "Defendants"). The U.S. Commodity Futures Trading Commission ("CFTC") brought the motion on July 13, 2012 (ECF 68), supported by a Statement of Undisputed Facts (ECF 68-3) and the Affidavit of Michael C. McLaughlin (ECF 69). Defendants responded to the motion on September 20, 2012 (ECF 71) and supported their response by the Affidavit of Patrick Cole, Individually and as CEO of GSM (ECF 71-1). CFTC filed a motion to strike Cole's affidavit (ECF 73), as well as a reply

(4:10-cv-02287)

memorandum in support of its motion for summary judgment (ECF 72). Defendants filed a response to the motion to strike (ECF 75), and Plaintiff submitted a reply memorandum in support of its motion. (ECF 76). Having carefully reviewed the arguments and evidence adduced the Court DENIES Plaintiff's motion for summary judgment against Defendants.. Since this decision is reached without consideration of the Affidavit of Patrick Cole, the motion to strike that affidavit is DENIED as moot.

FACTUAL BACKGROUND

Defendant Complete Developments LLC ("CDL") is a North Carolina limited liability company with its principal place of business in Warren, Ohio. From approximately January 2007 to July 2008, CDL solicited and accepted millions of dollars from hundreds of members of the general public for the purported purpose of trading off-exchange foreign currency ("forex") contracts in professionally managed accounts.[1] CDL offered its customers the opportunity to invest for periods of three, six or twelve months and told customers their funds would be used to trade forex, that they would receive interest ranging from 5% to 12% per month, and that at the end of the investment period, at least 80% of their principal would be returned.

GSM is a Canadian corporation, with its principal place of business in Mississauga, Ontario, Canada. Cole, a Canadian citizen, incorporated GSM and is GSM's President. GSM was the exclusive marketing agent for CLD, under the terms of an agency agreement. (ECF 1-1).

---

[1] Much of the Factual Background is taken from the Plaintiff's Statement of Undisputed Facts (ECF 68-3).

(4:10-cv-02287)

Under the agreement GSM received a 3% commission on funds invested by CDL customers, and an additional 5% commission on funds invested by customers who were referred by GSM.

As part of its marketing program for CDL, GSM prepared the CDL account application, documents describing CDL's investment programs and a promotional brochure. GSM also held investment seminars. The materials and seminars characterize CDL as a company with professional traders, and repeat the representations made by CDL, most critically, that the money would be placed in trading accounts, that 80% of the principal would guaranteed, that monthly interest payments of 7-12% would be paid, and that monthly payments were made from funds earned and not new customers' funds.

In truth, CDL was a Ponzi scheme. CDL stopped paying customers in or about July 2008 and in October 2008 notified customers that the majority of the funds invested had been "lost."

## ISSUE PRESENTED

It is undisputed that the CDL investment programs were a fraudulent scheme. It is undisputed that the Defendants, relying upon information provided by CDL, made material representations to investors. It is undisputed that these representations were false. There is only one issue: *scienter*.

GSM is charged with violations of Section 4b (2) (A) and (C) of the Commodity Exchange Act ("the Act") as amended by the Food, Conservation and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008), §§ 13101-13204, 112 Stat.

(4:10-cv-02287)

1651. To establish liability for fraud under this section, Plaintiff must show: 1) the making of a misrepresentation, misleading statement, or a deceptive omission; 2) materiality; and 3) *scienter*. *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002); *CFTC v. Carnegie Trading Group, Ltd.*, 450 F. Supp. 2d 788, 797-98 (N.D. Ohio 2006). The *scienter* element requires proof that Defendants intentionally or recklessly made false representations. The recklessness must involve "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *SEC* v. *George*, 426 F. 3d 786, 792 (6th Cir. 2005); *Mansbach v. Prescott, Ball & Turben*, 598 F. 2d 1017, 1025 (6th Cir. 1979).

Cole is alleged to be liable for GSM's violations as a "controlling person" of GSM, under Section 13 (b) of the Act. This section states, "the Commission has the burden of proving that the controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation." Again, to find the underlying violation requires Plaintiff's proof that the act or acts were done intentionally or recklessly.

The case is before the Court on summary judgment. Federal Rule of Civil Procedure 56(a) provides, in pertinent part, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to material fact and the movant is entitled to judgment as a matter of law." When the evidentiary matter adduced by the moving party does not establish the absence of a genuine issue, a summary judgment motion must be denied–even if it is unopposed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hibernia National Bank v. Administracion Central Sociedad Anonima*, 776 F, 2d 1277,1279 (5th Cir. 1985) ("The movant has the burden of

4

(4:10-cv-02287)

establishing the absence of a genuine issue of material fact an, unless he has done so, the court may not grant the motion, regardless of whether any response was filed.")[2]  Because Plaintiff has not met its burden of establishing an absence of a genuine issue regarding Cole's knowledge and state of mind, the motion for summary judgment is denied.

I. PLAINTIFF HAS FAILED TO ESTABLISH THE ABSENCE OF FACTUAL ISSUES REGARDING COLE'S STATE OF MIND.

    A. <u>The Plaintiff has Not Put Forth Evidence that, By Its Nature, Demonstrates Defendant Cole's *Scienter*</u>

The general rule is simple: Since resolution of the question of *scienter* will typically involve evaluation of witness demeanor and credibility, the issue is usually treated as inappropriate for summary judgment. *SEC v. Seaboard Corp.*, 677 F. 2d 1297, 1298 (9th Cir. 1982). There are truly exceptional cases, however, in which the demonstration of knowledge from circumstantial evidence is sufficient to establish an absence of *scienter,* and to do so even when the defendant has asserted the 5th Amendment privilege to remain silent. These cases involve evidence that, by its nature, demonstrates the defendant's knowledge.

The FCTC cites two cases to establish the propriety of granting summary judgment in a case involving *scienter*, even in the absence of testimony or evidence from the defendant, *SEC v. Lyttle,* 538 F. 3d 601 (7th Cir. 2008) and *CFTC v. Driver*, 877 F. Supp 2d 968 (C.D. Ca. 2012).

---

[2] This burden is not altered even if a negative inference is drawn against the defendant based upon the assertion of the 5th Amendment. *Inflight Newspapers, Inc.*, 423 B.R. 6 (E.D. N.Y. 2010.

(4:10-cv-02287)

Neither of these cases supports grant of summary judgment in this case. Indeed, a careful reading of the cases demonstrates the inadequacy of Plaintiff's showing here.

In *Lyttle,* defendants Lyttle and Knight were charged with "prime bank" fraud. The district court granted summary judgment in favor of the government. Lyttle and Knight appealed from the imposition of monetary penalties, which required the SEC's proof that the defendants acted intentionally or with reckless regard for the truth. *Lyttle*, 538 F. 3d 601, 602. Defendants had refused to testify, in discovery or trial, citing the 5th Amendment. On appeal they argued that, in the absence of their testimony with regard to state of mind, summary judgment could not be granted.

Judge Posner of the 7th Circuit disagreed. He pointed out the defendants had bilked 32 million from investors and had spent several million dollars of the money for their personal use (the opinion mentions a gazebo and custom-built piano). The defendants invested the funds in a company engaged in high-risk, rather than low-risk trading, as represented. Defendants falsely stated the investments were insured and they promised investors a return of 100 percent *per week*. For good measure, defendants warned investors not to make "unauthorized communications" about the investments because they could be "blackballed by the Federal Reserve." Judge Posner concluded these facts "left a reasonable jury with no alternative to inferring scienter." *Lyttle,* 538 F. 3d at 604 (citations omitted).

In *Driver* the defendant operated an improper commodity pool investment scheme. Among other acts, defendant deposited pool funds in "at least five" bank accounts held in his

6

(4:10-cv-02287)

name or the name of one of his companies. Of the $14.3 million defendant solicited, he only used $3.7 million to trade futures contracts, and used the rest "for personal and business expenses, including payment of $9.7 million to several pool participants as purported profits to conceal his trading losses." *Driver*, 877 F. Supp. 2d at 974-97. His trading "was abysmally unprofitable," but he sent pool participants periodic statements showing consistent profits. Since it was undisputed that defendant had control over and received statements from the futures trading accounts showing losses, the court held plaintiff had established, "Driver at most knew those statements [to investors regarding profits] were false, or at the very least recklessly distributed those statements without regard for the truth of the statements." *Driver*, 877 F. Supp. 2d at 978.

Both *Lyttle* and *Driver* involved defendant's diversion of investor funds for personal use. As the Sixth Circuit has said, spending investor funds on personal expenses is "a fact that itself establishes the requisite state of mind for committing securities fraud." *SEC v. George*, 426 F. 3d 786, 795 (6th Cir. 2005). This is frequently a "nail in the coffin" that, without more, establishes defendant's *scienter* . See also: *SEC v. Smart*, 678 F. 3d 850 (10th Cir. 2012) (defendant asserted his right to remain silent; the court upheld the district court's grant of summary judgment where the SEC showed defendant took investor money, and used it to "make partial payments to other investors and cover his and his wife's personal expenses.").

The proof of receipt of statements showing losses, while representing the investment is profitable is similarly slam-dunk evidence. Obviously, if, as in *Driver,* the defendant received

(4:10-cv-02287)

account statement showing losses, while sending out notices to investors claiming profits, the defendant knew the representations are false or, at a minimum, was reckless as to their truth.

*Lyttle* and *Driver* are exceptional cases: In both cases the moving party adduced evidence which, by its nature, unquestionably demonstrated defendants' *scienter*. There is no such evidence here.

The same definitive showing was required by the District Court for the Southern District of Ohio when granting summary judgment in a securities fraud case where the defendants' did not assert the right to remain silent. *SEC v. Thorn,* Case No. 2:01-CV-290, ECF 580, *aff'd sub nom*. *SEC v. George*, 426 F. 3d 792 (6th Cir. 2005). There were three defendants, Thorn, Malizia and McKinney.  These defendants told investors that monies would be invested in European "trading programs," non-registered exempt Europeans securities and overseas bonds. The investments were represented as having "little or no risk." All three defendants told investors to expect monthly rates of return from 3%-100%.

 The money collected was, in fact, used by defendants' for their personal extravagances (including $61,000 toward a Cartier diamond ring) or to pay other investors. There was no evidence trades were made, or that the market Thorn claimed to have invested in even existed.

All three defendants had experience in the securities market and prior employment at well-known brokerage firms. Despite his sophistication and experience, Thorn admitted he never received any documents confirming the purported trading and never witnessed any actual trading. He further admitted he did not ask for trade confirmations.  Malizia admitted he did not

(4:10-cv-02287)

know where the money would be invested and received no documentation regarding the purported investments. McKinney admitted they never received any documents confirming the purported trades, or investigated the investment. The district court decision, quoted with approval in the appellate opinion, found the defendants acted recklessly in failing to recognize the investment scheme as a fraud, or verify the legitimacy of the investment program, given their "prior professional experience as a stockbroker" and "employment at several well-known brokerage firms." Based upon this bundle of facts, including use of investors' funds for personal expenses, and the defendants' heightened expertise, the district court ruled that, as to all three defendants, the SEC had demonstrated *scienter*, a decision upheld by the Sixth Circuit.

In *George,* as in *Driver* and *Lyttle*, the defendants diverted investment funds for personal use–*prima facie* evidence of *scienter*. In this case there is no showing of diversion of investor funds for personal use. There is also no showing of any of the other most telling evidence in *Driver, Lyttle* and *George*. There is no showing Cole controlled the investor trading accounts. There is also no showing that Cole received credible information regarding the investment accounts impeaching CDL's representations from an independent, neutral third party, ignored them, and made representations inconsistent with the independent information. Tthere is no showing that Cole has professional expertise and experience which specially qualified him to detect or investigate securities fraud. In short, there is no showing of evidence which, by its nature, establishes *scienter*. Without such a showing regarding Cole's state of mind, questions of

9

(4:10-cv-02287)

fact, and credibility, remain. Indeed, as will be demonstrated below, the evidence presented by Plaintiff raises, rather than resolves, issues regarding Cole's knowledge and credibility.

> B. <u>The Evidence Relied Upon by Plaintiff Raises, Rather than Resolves, Factual Issues; It Is Ambiguous–At Best</u>

None of the evidence put forward by the FCTC, by its nature, demonstrates Cole had the requisite *scienter* for the fraud here alleged. Indeed, the evidence put forward by the FCTC regarding Cole's state of mind is consistently ambiguous and subject to multiple interpretations, raising factual issues that must be resolved by a jury.

The agency contract entered into March 30, 2007 is just such ambiguous evidence. (Exhibit 1 to the Complaint, ECF 1-1 at 24-34). Section 5 of the contract requires CDL to "establish[] credibility and maintain[] an excellent reputation." To ensure this, CDL agrees, among other things:

- to conduct an annual audit using a licensed accounting firm and supply the report to GSM;
- make all interest payments as scheduled and return principal at the end of each investing cycle;
- efficiently and accurately process applications and investor payments, and adopt policies, procedures and systems to eliminate error.

This does not read like a set of requirements that would be imposed if Cole or GSM knew that CDL was running a Ponzi scheme. But it does raise questions. E.g., Was there an audit? Who did it? What were they shown? If there was no audit, why not?

(4:10-cv-02287)

To use another example, there is the email sent by Cole on February 22 with the subject line: "CDL Credibility." The text, in full, states:

> Kevin/Karen:
>
> As we have communicated many times, the biggest issue we face is convincing individuals that CDL and the programs are not a scam. Yes, indeed this concern will gradually go away as Participants get paid and their Principals (sic) are returned. This unfortunately will take months and so we have a strategy that will eliminate scam-concerns and also move CDL to a whole new corporate level.
>
> The strategy is two fold;
> a) engage a business consultant to put in place any missing pieces in anticipation for part b)
> b) engage a known Auditing Firm (PWD, Deloitte & Touche, etc.) to perform an audit of CDL and produce a report similar to the attached.
>
> The benefits are many and we will discuss further on Saturday but I wanted you to have this ahead of time so you can think about it and maybe identify a Business Consultant & Audit Firm in or near Warren.
>
> See you Saturday.

Plaintiff's Exhibit 10 to deposition of Patrick Cole, ECF 56-11. The FCTC characterizes this document as sinister and damning. It is equally probable a juror would see this as evidence Cole was ignorant this was a Ponzi scheme. Of course investors are wary of investing large money–that observation is hardly suspicious. In fact, it is a prudent and sensible idea to have a nationally respected accounting, audit and business consulting firm review the operation and independently vouch for its legitimacy.

Kevin communicated his accountant "didn't think much of the idea," but Cole didn't stop pressing for independent verification:

11

(4:10-cv-02287)

> I know your Accountant (sic) did not think much of our request for a third party audit of operations, but I have attached an example of a Company that has done $100 million in business over the last 5 years but yet use this strategy to establish credibility.
>
> We are courting someone to be an affiliate of GSM who has a Database (sic) of wealthy investors who are looking for opportunities to grow this wealth. In our discussions the prime concern is being able to establish the credibility of CDL. The third party Audit (sic) and report as we suggest, will do such (sic) that and open many doors.

ECF 1-1 at 55. The email continues by providing the links to the PWC website and a list of CPA firms in Ohio. Again, this is subject to different interpretations by a trier of fact.

CDL did produce an audit report, along the lines of the one issued by PWC to a different firm and it was signed by a purported CPA. In fact, he wasn't a CPA. But, Plaintiff provides no evidence that Cole knew Paul Hawkens was a fraud. Why did Cole accept an audit from a solo practitioner? What explanation was given for this substitution? These questions, and others, raised by the audit letter, are left unanswered.

Plaintiff tries to establish reckless behavior, as a matter of law, based upon Cole's failure to inquire more about the investment. For this, they rely, *inter alia*, upon Cole's "notice of problems" based on the minutes of GSM board meeting where the board discussed complaints from investors about CDL's failure to provide information and quick response to investor inquiries. At the meeting the board directs Patrick to write an email stating, "the levels of complaints are just too high and they have to address the many communication issues." ECF 56-22. This is hardly a smoking gun. [3]

---

[3] The Court is also aware that in the Sixth Circuit case finding recklessness based upon a
(continued...)

(4:10-cv-02287)

CFTC also relies on the list of questions Cole created when preparing to perform due diligence on CDL. (ECF 56-12).The list calls for extensive exploration of the background of the principal and the company. The background check for the principal lists 13 topics, including character references, police record, result of court cases, reason for closure of CDL/Instant Money Tree, engineering certification, etc. Under business matters the memo lists 20 goals, including looking at bank statements to establish current balance, meeting with current local program participants, a walk-through of office procedures, and a meeting with the accountant. The list is all that CFTC puts forth as evidence. Plaintiff argues that either they asked the questions and performed the acts, in which case they knew the program was a fraud, or they didn't, and were reckless. But it isn't that simple. The Court does not know: Were these topics investigated? What materials were produced for inspection? What representations were made by Kevin Harris and Karen Starr? If some of the tasks were not completed, why not?

So it is with all of the FCTC evidence: it is incomplete and subject to multiple interpretations. This is not enough for summary judgment. If there are unexplained gaps in the factual showing or issues that could reasonably be resolved in favor of either party, summary

---

[3](...continued)
failure to detect fraud or investigate the investment, *SEC v. George, supra.*, all of the defendants were experienced in the securities industry. Both the district and appellate courts noted and relied upon their prior professional experience at nationally known brokerages in finding recklessness, which requires "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *George,* 426 F. 3d at 792. Moreover, as discussed above, all three defendants had also hijacked investor funds for their own use. See, *infra*, at 8,9.

(4:10-cv-02287)

judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Unisys Savings Plan Litigation v. Unisys Corporation*, 74 F. 3d 420, 433 n.10 (3rd Circuit 1996).

II. A NEGATIVE INFERENCE BASED UPON COLE'S ASSERTION OF HIS CONSTITUTIONAL  RIGHT TO REMAIN, EVEN IF APPLICABLE, WOULD BE INSUFFICIENT TO BOLSTER PLAINTIFF'S SHOWING

To shore up their position, FCTC claims a "negative inference" should be drawn from Cole's 5th Amendment silence and used to interpret the ambiguous evidence according to Plaintiff's arguments and reading.

First, while it is true that the circuits which have ruled on the issue have consistently interpreted *Baxter v. Palmigiano* to permit a court in a civil matter to take a negative inference from a party's assertion of the right to remain silent, the inference is not required. *Baxter v. Palmigiano,* 425 U.S. 308, 316 (1976). The decision of whether or not to apply the inference is subject to the district court's discretion. *FDIC v. Fidelity & Deposit Co.*, 45 F. 3d 969, 977 (5th Cir. 1995); *La Salle Bank Lake View v. Seguban*, 54 F. 3d 387, 389 (7th Cir. 1995) (collecting appellate cases finding it permissible to draw a negative inference); *FTC v. Ross,* 2012 WL 4018027 (D. Md. September 11, 2012) (court elects not to apply an adverse inference). Plaintiff has not cited a Sixth Circuit case that provides any guidance as to when the inference should be employed.

Guidance from other circuits is also scant. At least three circuits have held that an adverse inference alone is not enough to support a summary judgment showing of an absence of a genuine issue of fact; the movant must submit further evidence in support of the motion. *See, e.g., SEC v. Colello,* 139 F. 2d 674, 678 (9th Cir. 1998); *LaSalle*, 54 F. 3d. at 391; *Fidelity & Deposit*, 45 F. 3d

(4:10-cv-02287)

at 977.  Building on this, at least one court has suggested that the inference is most appropriate when the moving party has "ample additional evidence." *Driver*, 877 F. Supp. 2d 968, 977 ("Because there is ample additional evidence to support the CFTC's claims on summary judgment, the Court finds it appropriate [to  employ an adverse inference].") Certainly if this is the test, no inference should be used here.

Another problem is that, while the Plaintiff has cited Sixth Circuit authority for the proposition that an affidavit submitted in opposition to a summary judgment may be struck, the Plaintiff has not cited a Sixth Circuit case which holds that a negative inference is properly drawn in a case involving summary judgment. This remains an open question in many circuits. See, e.g. *SEC v. Smart,* 678 F. 3d 850, 858 n.8 (10th Cir. 2012) (Tenth Circuit does not reach issue of whether inference may be applied in summary judgment cases); *Stichting Ter Berhartiging Van de Belangen v. Schreiver,* 407 F. 3d 34 (2nd Cir. 2005) (Second Circuit does not apply inference in summary judgment case).

The well and long established rule is that, in a Rule 56 motion, all reasonable inferences must be drawn in favor of the non-moving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). This necessarily creates a tension with employing a negative inference against a non-moving party, and, facing this conflict, some courts refuse to allow a negative inference to be used in summary judgment. *Stichting Ter Berhartiging Van de Belangen,* 407 F. 3d at 55 ("Even assuming that a *jury* might draw [an adverse inference]...*we* are required at summary judgment to draw all reasonable inferences in favor of the non-moving party[.]" (emphasis in original)).

(4:10-cv-02287)

So, what can or does it mean to draw an adverse inference against a non-movant based on the invocation of the right against self-incrimination when the court is deciding a motion for summary judgment in which it is bound to draw all reasonable inferences in favor of the non-moving party? No authority from the Sixth Circuit is cited on this issue.

Even assuming the Sixth Circuit approves of the use of the negative inference on summary judgment, it is unclear what that means. The most thoughtful discussion of the issue appears in the 7th Circuit opinion *LaSalle Bank Lake View v. Seguban*, 54 F. 3d 387 (7th Cir. 1995). After a thorough discussion of the Supreme Court case law supporting, and limiting, the permissibility of drawing a negative inference in a civil action, the court reached its first conclusion: a judgment imposing liability cannot be based on the failure to testify alone; adverse evidence must also be produced. The court stated a defendant's silence must be "weighed *in light of other evidence* rather than leading directly and without more to the conclusion of guilt or liability." *LaSalle*, 54 F. 3d at 391(emphasis in original). This 7th Circuit holding has been adopted by other courts which have considered the issue. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc,* 561 F.3d 1298, 1394 (11th Cir. 2009); *SEC v. Colello*, 139 F. 3d 674, 678 (9th Cir. 1998).

Continuing its scholarly analysis, the Seventh Circuit proposed that in considering a motion for summary judgment, the negative inference should be limited to an admission that the facts revealed by the opposing party's evidence are true. *LaSalle Bank*, 43 F. 3d at 391 and n.7. The court pointed out that this inference–that the facts revealed by the opponent's evidence are true--would not interfere with the operation of the ordinary summary judgment rule that all

16

(4:10-cv-02287)

reasonable inferences in interpretation and meaning of the admitted facts must be drawn in favor of the non-moving party. *Id.*

While a party's admission of the facts revealed by the moving party's evidence would be invaluable in certain cases (for example, when there is evidence of the defendant's bank account and money transfers), such an inference is of little or no value to CFTC in this case: Cole is happy to admit he authored the emails proposing PWC be used to audit CDL. The fight in this case is over the interpretation and meaning of the evidence. Under the *La Salle Bank* rule all interpretations of and inferences from the evidence would be drawn in favor of Cole, as is true in all other summary judgment motions, and CFTC clearly loses.

Even if the inference is made more weighty and, for example, is deemed to eliminate the non-moving party's automatic advantage, creating "an equal playing field" for inferences, the CFTC loses. For, "[e]ven if the facts are undisputed, summary judgment may not be granted where there is disagreement over the inferences that can be reasonably drawn from those facts." *Unisys,* 74 F. 3d at 433.

Any greater inference that would allow a Fifth Amendment silence to be deemed admission by Defendants of all of Plaintiff's arguments and interpretations skates too close to causing the invocation of the constitutional right to directly and without more lead to the conclusion of liability, which is forbidden. *LaSalle, supra*; *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., supra*; *SEC v. Colello, supra.* Particularly in a case where the government, with its "awesome power" and control of both criminal and civil actions, is the moving party, it is prudent to act gingerly, heeding Justice Brennan's warning that in such a case use of any

17

(4:10-cv-02287)

inference "implicate[s] the policy considerations underlying the privilege." *La Salle Bank,* 43 F. 3d at 391 n.8, quoting *Baxter v. Palmigiano*, 425 U.S. 308 at 445-46 (1976) (Brennan, J., dissenting).

The Court is aware other courts have allowed a negative inference on the topics covered by every question as to which a party invoked the Fifth Amendment. *See, e.g., Driver, supra.* This Court will not exercise its discretion to impose this heavy a burden on the exercise of the constitutional right to remain silent without clear and binding Sixth Circuit authority directing such a penalty, particularly when there is such a weak showing by the government.

## CONCLUSION

Since a rational trier of fact could find for the non-moving party based on the evidence put forth, CFTC has not carried its Fed. R. Civ. P. 56 (a) burden of establishing they are entitled to judgment as a matter of law and summary judgment must be DENIED as to both defendants. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Michigan Paytel Joint Venture v. City of Detroit,* 287 F. 3d 527, 534 (6th Cir. 2002). Because this decision is reached without consideration of the Affidavit of Patrick Cole, the motion to strike his affidavit is DENIED as moot.

(4:10-cv-02287)

The Court has set a Status Conference in this case on April 24, 2013 at noon. The parties should be prepared to discuss: 1) the possible waiver/withdrawal of Cole's invocation of his Fifth Amendment right to remain silent; 2) modifications that could be made in the discovery and Case Management schedules to mitigate prejudice to CFTC from any waiver/withdraw, and 3) a trial date.

IT IS SO ORDERED.

Date: March 27, 2013                                     *s/ David D. Dowd, Jr.*
                                                         David D. Dowd, Jr.
                                                         U.S. District Judge